## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| **DEREK MCCORD**, an individual,<br><br>               Plaintiff,<br><br>v.<br><br>**MPULSE MOBILE, INC.**, a Delaware corporation,<br><br>               Defendant. | **CIVIL ACTION**<br><br>**Case No.  8:25-cv-3401**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, by and through undersigned counsel, and states the following for his Complaint:

### NATURE OF THE ACTION

1.      This is a civil action for breach of contract arising from Defendant's refusal to pay Plaintiff earned sales commissions totaling $831,761.71 under a written Sales Commission Plan, and Defendant's subsequent wrongful termination of Plaintiff's employment in an attempt to avoid its contractual obligations.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6.    Plaintiff Derek McCord is, and at all times material to this action has been, a citizen and resident of Sarasota County, Florida, where he is domiciled. At all times material to this action, Plaintiff was a citizen and resident of the State of Florida.

7.    Defendant mPulse Mobile, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 21255 Burbank Boulevard, Los Angeles, California 91367. Defendant is engaged in the business of providing mobile health technology solutions and software-as-a-service products to healthcare organizations throughout the United States. Upon information and belief, none of Defendant's principal places of business are located in the State of Florida, and Defendant is a citizen of the State of California for purposes of diversity jurisdiction.

8.    The amount in controversy in this action exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Specifically,

Plaintiff seeks damages of at least $831,761.71 in unpaid commissions, plus pre-judgment and post-judgment interest, costs, and attorneys' fees.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

10.    This Court may exercise personal jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial, systematic, and continuous business activities in the State of Florida, as explained below.

**mPulse's Business Activities in Florida**

11.    Defendant has purposefully conducted substantial business activities in Florida sufficient to support personal jurisdiction in this Court.

12.    Employment of Florida Resident: Defendant entered into an employment contract with Plaintiff, a Florida resident, and directed Plaintiff to perform employment duties as Senior Vice President of Sales from his Florida residence for over one year, paying him salary and commission compensation in Florida.

13.    Florida Employment Operations: Upon information and belief, Defendant maintains employment operations in Florida, including filing Labor Condition Applications (LCAs) and H-1B visa sponsorship documentation with

the U.S. Department of Labor listing Florida work locations, including Orlando, Florida.

14.     Contracts with Florida Government: Upon information and belief, Defendant has contracted with Florida governmental entities, including Brevard County Public Schools, to provide its MPulse CMMS software and related services.

15.     Subcontractor to Florida Health Insurer: Upon information and belief, Defendant serves as a registered administrative subcontractor and/or affiliate for UnitedHealthcare of Florida, Inc., as reported to the Florida Agency for Health Care Administration (AHCA) in Administrative Subcontractors & Affiliates Reports for 2025.

16.     Services to Florida Health Plans: Upon information and belief, Defendant provides mobile application development, hosting, and management services to Florida health plans and insurers, including serving as a vendor for Florida-based health plan mobile applications.

17.     Florida-Directed Messaging Services: Upon information and belief, Defendant hosts, operates, and manages SMS shortcode programs and mobile messaging services specifically directed to Florida organizations and residents, including the "Better Health Group FL" SMS program.

18.     Telecommunications Infrastructure: Upon information and belief, Defendant maintains telecommunications infrastructure, shortcode

registrations, and authorizations (including with iconectiv) to provide messaging services to Florida-based clients and residents.

19.    Revenue from Florida: Upon information and belief, Defendant derives substantial revenue from Florida-based contracts with governmental entities, healthcare insurers and plans, and Florida-directed mobile health programs.

20.    Breach of Contract with Florida Resident: Defendant breached its contractual obligations to Plaintiff, a Florida resident, by refusing to pay earned commissions and terminating Plaintiff's employment while Plaintiff resided in Florida, causing direct harm to Plaintiff in Florida.

21.    Defendant's business activities in Florida are not isolated or sporadic but constitute a systematic and continuous course of business directed toward the Florida market, including the Florida healthcare industry, Florida governmental entities, and Florida residents.

22.    Defendant's conduct of business in Florida, including its employment relationships, governmental contracts, healthcare industry contracts, provision of software and telecommunications services to Florida entities and residents, and breach of contract with a Florida resident, subjects Defendant to personal jurisdiction in this Court and satisfies the requirements of both Florida's long-arm statute and federal constitutional due process.

## GENERAL ALLEGATIONS

**Background and Employment History**

22.    Plaintiff began his employment in August 2012 as Senior Vice President of Sales for Online Insight, LLC, a company that provided software solutions to the healthcare industry.

23.    In November 2021, Online Insight, LLC was acquired by HealthTrio, LLC ("HealthTrio"), and Plaintiff continued in his role as Senior Vice President of Sales.

24.    In addition to maintaining his position, Plaintiff became a part owner of HealthTrio following the November 2021 acquisition.

25.    In December 2023, HealthTrio, LLC was acquired by Defendant mPulse Mobile, Inc.

26.    Following the December 2023 acquisition, Plaintiff became Senior Vice President of Sales for mPulse and continued to perform his employment duties from his residence in Sarasota County, Florida.

27.    Throughout his employment with Online Insight, LLC, HealthTrio, LLC, and mPulse, Plaintiff was compensated through a combination of base salary and commissions earned on sales.

28.    Plaintiff's base salary with mPulse was $250,000 per year, and his total annual compensation, including commissions, regularly exceeded $1,000,000.

**The Sales Commission Plan**

26.    On January 24, 2022, J. Dominic Wallen, then-CEO of HealthTrio, LLC, approved the HealthTrio, LLC Sales Commission Plan for Online Insight Products (the "Sales Commission Plan" or "Commission Plan").

27.    On January 28, 2022, Plaintiff entered into the Sales Commission Plan with HealthTrio, LLC.

28.    The Commission Plan is a written contract that governs the payment of commissions to Plaintiff for qualifying sales of non-House Account customers.

29.    Under the Commission Plan, Plaintiff was entitled to receive an 8% commission on qualifying new sales of non-House Accounts.

30.    The Commission Plan provided that commissions on qualifying new sales would be paid as follows: "In the event the Customer pays a minimum of three months PMPM upon Contract signing: Fifty Percent (50%) will be earned and paid when payment is received from the client[;] Fifty Percent (50%) will be earned and paid upon Go-Live."

31.    The Commission Plan further provided: "Notwithstanding any other provisions contained in this Plan, under no circumstances shall the total commissions paid under this Plan exceed one third (1/3rd) of the amount received by the Company under the Contract."

32.    The Commission Plan also stated: "All commission payments to Salespersons must be approved by the CEO of the Company before being made so that the CEO may assure that this Plan has been carried out properly."

33.    The CEO approval provision did not grant the CEO discretionary authority to refuse payment of commissions that were earned under the terms of the Commission Plan; rather, it provided the CEO authority to ensure commissions were properly calculated and paid according to the Commission Plan's terms.

34.    The Commission Plan was applicable to all sales with a contract execution date between January 1, 2022 and December 31, 2022.

35.    Upon information and belief, when mPulse acquired HealthTrio, LLC in December 2023, mPulse became bound by and assumed all obligations under the Commission Plan, including all commissions owed to Plaintiff.

**The Choice Deal and Commission Payments**

44.    In December 2022, while employed by HealthTrio, LLC, Plaintiff closed a qualifying new sale of a non-House Account with Choice Administrator Insurance Services, Inc. ("Choice").

45.    The CEO of HealthTrio at that time determined that the Choice deal was a qualifying new sale of a non-House Account subject to the Commission Plan.

46.    The total contract value of the Choice deal was $36,930,000.

47.     Under the Commission Plan's 8% commission rate for qualifying new sales, Plaintiff earned a total commission of $2,954,400 on the Choice deal.

48.     On or about December 27, 2022, Choice paid HealthTrio an initial payment of $199,000, which included a three-month prepayment of the minimum monthly managed service fee.

49.     This initial payment satisfied the Commission Plan's requirement that "the Customer pays a minimum of three months PMPM upon Contract signing."

50.     Pursuant to Section A.1 of the Commission Plan, upon Choice's payment of the three-month prepayment, fifty percent (50%) of Plaintiff's total commission on the Choice deal—$1,477,250—was earned and became due and payable to Plaintiff.

51.     The CEO of HealthTrio at that time, Mr. Wallen, invoked the Commission Plan's provision limiting commission payments to "one third (1/3rd) of the amount received by the Company under the Contract."

52.     Accordingly, HealthTrio began paying Plaintiff his earned commission in monthly installments equal to 33.33% of each payment received from Choice.

53.     From January 2023 through August 2024, Plaintiff's earned commission on the Choice deal was paid to him in this manner, first by HealthTrio and later by mPulse following mPulse's acquisition of HealthTrio.

54.    These commission payments were approved by multiple executives over an eighteen-month period, including two CEOs, three CFOs, two Vice Presidents of Finance, mPulse's President, and mPulse's Chief Sales Officer.

55.    The commission payment structure was heavily scrutinized and discussed, including at the board level, before payments commenced.

56.    Between January 2023 and August 2024, Plaintiff received a total of $987,601 toward his earned commission on the Choice deal.

57.    As of September 1, 2024, Plaintiff remained owed $1,966,799 of the $2,954,400 in total earned commission on the Choice deal.

**mPulse's Breach of the Commission Plan**

58.    On or about September 3, 2024, Bob Farrell, CEO of mPulse, called Plaintiff and informed him that mPulse would no longer make commission payments toward the Choice deal.

59.    During this call, Mr. Farrell told Plaintiff that the payments would stop because, in Mr. Farrell's view, Plaintiff was being paid too much for someone in his position.

60.    Mr. Farrell also told Plaintiff that his base salary was too high but would be left alone, and that Plaintiff should be happy with the other commissions he was receiving.

61.    Plaintiff advised Mr. Farrell that he was misreading or misapplying the Commission Plan and suggested that Mr. Farrell have the matter reviewed by an attorney.

62.    Approximately one week later, Mr. Farrell called Plaintiff back and admitted that mPulse was required to continue making commission payments toward the Choice commission that Plaintiff had earned.

63.    Mr. Farrell told Plaintiff that mPulse would continue paying toward the Choice commission as it had in the past.

64.    However, contrary to this representation, on September 20, 2024, Mr. Farrell sent Plaintiff an email notifying him that mPulse would no longer make payments toward the Choice commission that Plaintiff had earned.

65.    In the September 20, 2024 email, Mr. Farrell falsely asserted that commission payments were contingent on PMPM (per-member-per-month) revenues and claimed that because Choice's payments to mPulse were categorized as implementation fees rather than PMPM fees, mPulse would cease commission payments.

66.    This assertion has no basis in the language of the Commission Plan, which contains no restriction limiting the one-third payment provision to PMPM revenues only.

67.    Mr. Farrell acknowledged in his September 20, 2024 email that as of that date, Choice had paid mPulse a total of $3,655,484.

68.    Under the Commission Plan, one-third of $3,655,484 equals $1,218,494.67, which should have been paid to Plaintiff toward his earned commission.

69.    However, Plaintiff had only received $987,601 as of that date, leaving him underpaid by $230,893.67 even by Mr. Farrell's own calculations.

70.    Following the September 20, 2024 email, mPulse failed and refused to make any further commission payments to Plaintiff for the remainder of his employment.

71.    By the time of Plaintiff's termination on January 8, 2025, Choice had paid mPulse a total of $5,458,633.98.

72.    One-third of $5,458,633.98 equals $1,819,544.66, which is the amount Plaintiff should have been paid toward his earned commission as of his termination date.

73.    Plaintiff had received only $987,601, leaving a balance owed of $831,761.71 in unpaid commissions.

**Wrongful Termination to Avoid Payment**

74.    On January 8, 2025, mPulse terminated Plaintiff's employment.

75.    Upon information and belief, mPulse terminated Plaintiff's employment in bad faith and for the improper purpose of avoiding payment of the substantial commissions owed to Plaintiff under the Commission Plan.

76.    Upon information and belief, mPulse's decision to terminate Plaintiff was made by Mr. Farrell and was motivated by Mr. Farrell's stated belief that Plaintiff was "being paid too much" and his desire to avoid paying the commissions Plaintiff had earned.

## COUNT I: BREACH OF CONTRACT

83.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

84.    The Sales Commission Plan executed between Plaintiff and HealthTrio, LLC on January 28, 2022 is a valid and enforceable written contract.

85.    When mPulse acquired HealthTrio, LLC in December 2023, mPulse became bound by and assumed all obligations under the Commission Plan, including all commissions owed to Plaintiff.

86.    Plaintiff fully performed his obligations under the Commission Plan by closing the Choice deal, a qualifying new sale of a non-House Account, in December 2022.

87.    Under Section A.1 of the Commission Plan, Plaintiff earned fifty percent (50%) of his total 8% commission—$1,477,200—when Choice paid the three-month PMPM prepayment in December 2022.

88.    Under the Commission Plan, this earned commission was required to be paid to Plaintiff, with payments limited to one-third of each payment received by the company from Choice.

89.    The Commission Plan contains no language limiting the one-third payment provision to revenues designated as "PMPM" as opposed to "implementation fees."

90.    The plain language of Section B.7 of the Commission Plan states that "under no circumstances shall the total commissions paid under this Plan exceed one third (1/3rd) of the amount received by the Company under the Contract," without any distinction between types of revenue.

91.    For eighteen months, from January 2023 through August 2024, mPulse and its predecessor HealthTrio made commission payments to Plaintiff equal to 33.33% of payments received from Choice, consistent with the Commission Plan's terms.

92.    These payments were approved by multiple senior executives of both HealthTrio and mPulse, demonstrating mPulse's acceptance and ratification of the Commission Plan's payment terms.

93.    By the time mPulse ceased making commission payments in September 2024, Choice had paid mPulse a total of $3,655,484.

94.    One-third of $3,655,484 equals $1,218,494.67, which should have been paid to Plaintiff toward his earned commission.

95.    Plaintiff had received only $987,601, leaving him underpaid by $230,893.67 as of September 2024.

96.    From September 2024 through January 2025, mPulse failed and refused to pay Plaintiff any portion of the one-third of payments received from Choice, in direct violation of the Commission Plan.

97.    By the time of Plaintiff's termination on January 8, 2025, Choice had paid mPulse a total of $5,458,633.98.

98.    One-third of $5,458,633.98 equals $1,819,544.66.

99.    As Plaintiff had received only $987,601 in total commission payments, mPulse owed Plaintiff $831,761.71 in unpaid earned commissions as of the date of Plaintiff's termination.

100.    mPulse's failure and refusal to pay one-third of payments received from Choice toward Plaintiff's earned commission, from September 2024 through January 2025 and continuing thereafter, constitutes a material breach of the Commission Plan.

101.    mPulse's assertion that commission payments were limited to PMPM revenues only is unsupported by the plain language of the Commission Plan and contradicts mPulse's own eighteen-month course of performance under the agreement.

102.    As a direct and proximate result of mPulse's breach of the Commission Plan, Plaintiff has suffered damages in an amount no less than

$831,761.71, representing unpaid earned commissions owed under the contract.

103.  Plaintiff is also entitled to pre-judgment interest on the unpaid commissions from the dates such payments became due under the Commission Plan.

104.  Plaintiff is entitled to post-judgment interest on any judgment entered in his favor.

105.  Plaintiff is entitled to recover his reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Florida Statute § 448.08.

## COUNT II: QUANTUM MERUIT / UNJUST ENRICHMENT
### (Pleaded in the Alternative to Count I)

106.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

107.  In the event that the Court determines that no enforceable contract exists between Plaintiff and Defendant, Plaintiff pleads this Count in the alternative.

108.  Plaintiff performed valuable services for Defendant as Senior Vice President of Sales, including closing the Choice deal valued at $36,930,000.

109.  Defendant accepted and benefited from Plaintiff's services and the revenue generated from the Choice contract.

110.   Defendant had knowledge of the value of Plaintiff's services and the customary compensation for such services in the industry.

111.   For eighteen months, from January 2023 through August 2024, Defendant made partial commission payments to Plaintiff at a rate of 33.33% of payments received from Choice, thereby acknowledging the value of Plaintiff's services and creating a reasonable expectation of continued payment.

112.   These partial payments established a course of dealing demonstrating Defendant's recognition that Plaintiff was entitled to compensation for successfully closing the Choice deal.

113.   Defendant has been unjustly enriched by retaining the benefit of Plaintiff's services and the revenue from the Choice contract while refusing to pay Plaintiff the full value of his earned commissions.

114.   It would be unjust and inequitable for Defendant to retain the benefits of Plaintiff's services without compensating Plaintiff for the reasonable value of those services.

115.   The reasonable value of Plaintiff's services with respect to the Choice deal is no less than $831,761.71, representing the unpaid portion of commissions Plaintiff should have received as of his termination date.

116.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered damages in an amount no less than $831,761.71.

117.    Plaintiff is entitled to pre-judgment and post-judgment interest on any award.

### COUNT III: PROMISSORY ESTOPPEL
(Pleaded in the Alternative to Counts I and II)

118.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

119.    In the event that the Court determines that no enforceable contract exists between Plaintiff and Defendant, and that quantum meruit does not apply, Plaintiff pleads this Count in the alternative.

120.    Defendant, through its CEO Mr. Wallen, and later through its executives who approved payments to Plaintiff, made clear and definite promises to pay Plaintiff commissions on the Choice deal at a rate equal to one-third of payments received from Choice.

121.    These promises were evidenced by:

    a.   The Sales Commission Plan itself;

    b.   Mr. Wallen's decision to implement the one-third payment structure;

    c.   Eighteen months of consistent payments from January 2023 through August 2024;

    d. Approval of these payments by two CEOs, three CFOs, two Vice Presidents of Finance, mPulse's President, and mPulse's Chief Sales Officer; and

    e. Mr. Farrell's acknowledgment in September 2024 that mPulse was required to continue making payments.

122. Defendant reasonably expected that Plaintiff would rely on these promises in continuing his employment and in not seeking other employment opportunities.

123. Plaintiff did in fact rely on Defendant's promises by:

    a. Continuing his employment with mPulse after it acquired HealthTrio;

    b. Performing his job duties as Senior Vice President of Sales;

    c. Foregoing other employment opportunities; and

    d. Accepting the installment payment structure rather than demanding immediate full payment of earned commissions.

124. Plaintiff's reliance on Defendant's promises was reasonable and foreseeable.

125. Plaintiff has been substantially injured by his reliance on Defendant's promises, having lost $831,761.71 in unpaid commissions, plus the value of continued employment.

126.   Injustice can only be avoided by enforcing Defendant's promises and awarding Plaintiff the full amount of unpaid commissions.

127.   As a direct and proximate result of Defendant's breach of its promises, Plaintiff has suffered damages in an amount no less than $831,761.71.

128.   Plaintiff is entitled to pre-judgment and post-judgment interest on any award.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Derek McCord respectfully requests that this Court enter judgment in his favor and against Defendant mPulse Mobile, Inc. as follows:

A. Awarding Plaintiff compensatory damages in an amount no less than $831,761.71, plus such additional amounts as may be proven at trial;

B. Awarding Plaintiff pre-judgment interest on all amounts due from the dates such payments became due and owing;

C. Awarding Plaintiff post-judgment interest at the maximum rate allowed by law;

D. Awarding Plaintiff his reasonable attorneys' fees and costs incurred in prosecuting this action;

E. Awarding Plaintiff such other and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

Dated: December 12, 2025

**/s/ Benjamin H. Yormak**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
Yormak Employment & Disability Law
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com